UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| CHRISTIAN OZUNA | CIVIL ACTION |
| VERSUS | |
| VICTOR PENA, ET AL. | 22-915-SDD-RLB |

**OMNIBUS RULING**

Before the Court are Defendants' *Motion in Limine to Exclude Expert Testimony from Officer Joshua Dunaway*,[1] *Motion in Limine to Exclude Future Medical Care Evidence*,[2] *Motion in Limine to Exclude Causation Opinion of Dr. Sean Graham*,[3] and *Motion in Limine to Exclude Evidence of Future Earnings Loss*.[4] The Plaintiff opposes[5] all the Motions in Limine and Defendants have filed replies.[6]

I. **LEGAL STANDARD: EVALUATION AND ADMISSION OF OPINION TESTIMONY**

Opinion testimony is admissible under the Federal Rules of Evidence ("FRE"), if (1) the witness is qualified as an expert by knowledge, skill, experience, training, or education, (2) the expert's reasoning or methodology underlying the testimony is sufficiently reliable, and (3) the testimony is relevant.[7] The party offering expert testimony is not required to establish the correctness of the opinion but the proponent of the opinion testimony bears the burden of establishing "by a preponderance of the evidence that the

---

[1] Rec. Doc. 29.
[2] Rec. Doc. 30.
[3] Rec. Doc. 31.
[4] Rec. Doc. 32.
[5] Rec. Docs. 36, 34, 33, and 35.
[6] Rec. Docs. 45, 44, and 43.
[7] Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

testimony is reliable."[8] "Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under FRE 702."[9]

The proponent of expert opinion testimony has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence.[10] The trial judge in all cases of proffered expert testimony must determine its reliability. An opinion must be properly grounded, well-reasoned, and not speculative before it can be admitted.[11] The expert's "reasoning or methodology [must fit] the facts of the case."[12] "[O]pinions based on experience are not inherently unreliable" but an expert must "show how his experience or expertise led to his conclusions."[13]

FRE 702 was amended in 2023 in two respects. First, to emphasize that 702 factors must be demonstrated by a preponderance of the evidence. The official comments explain that this "was made necessary by the courts that have failed to apply correctly the reliability standard of th[e] rule"[14] Second, Rule 702(d) was amended to emphasize that an expert's opinion "must stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology."[15]

---

[8] *Moore v. Ashland Chem., Inc.,* 151 F.3d 269, 276 (5th Cir.1998), *cert. denied,* 526 U.S. 1064 (1999).
[9] *Munoz v. Orr,* 200 F.3d 291, 301 (5th Cir. 2000); *Ricks v. City of Alexandria,* 2014 WL 4274144, at *8 (W.D.La., 2014).
[10] *Bourjaily v. United States*, 483 U.S. 171 (1987).
[11] *Lewis v. Cain,* 605 F. Supp. 3d 858, 861 (M.D. La. 2022).
[12] *Burst v. Shell Oil Co.*, 120 F. Supp. 3d 547, 551 (E.D. La. 2015); *see also Burleson v. Texas Dep't of Crim. Just.*, 393 F.3d 577, 584-85 (5th Cir. 2004) ("Trial courts must make 'a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592–93 (1993)).
[13] *Fields v. QBE Specialty Ins. Co.*, 2022 WL 2067835, at *2 (5th Cir. June 8, 2022).
[14] Fed. R. Evid. 702 (2023 Amendments).
[15] *Id*.

In opposition to the Defendants' motion to exclude future medical and future earnings loss opinions, the Plaintiff argues that questions relating to the bases and sources of the opinions affect the weight that should be assigned to the opinion, "rather than its admissibility, and should be left for the jury's consideration."[16] Punting the reliability requirements of Rule 702 to the jury is inconsistent with this Court's gatekeeping function.

## II. Motion to Exclude Expert Testimony from Officer Joshua Dunaway (Rec. Doc. 29)

Officer Joshua Dunaway of the Gonzales Police Department investigated the automobile accident made the subject of this suit and prepared the Uniform Motor Vehicle Crash Report (the "Crash Report").[17] This lawsuit arises out of an auto accident that occurred in Ascension Parish on September 12, 2021, involving a vehicle operated by plaintiff, Christian Ozuna ("Plaintiff"), and a vehicle operated by defendant, Victor Pena.[18] According to Officer Dunaway's investigation, the Defendant driver was at fault in causing the accident. Defendant seeks to exclude the opinion of Officer Dunaway. Defendants argue that "police officers, who are not otherwise qualified as an expert in a relevant field, may not offer testimony as to causation of a traffic accident."[19] Defendants further argue that under FRE 701 "[a]n officer's lay-witness testimony is limited to personal observations made at the scene."[20] This is an accurate statement of law.

---

[16] Rec. Doc. 35, p. 6 (citing *Scordill v. Louisville Ladder Grp., L.L.C.*, 2003 WL 22427981, at *3 (E.D. La. 2003).
[17] Rec. Doc. 36-1.
[18] Powerline Services, Inc., Defendant Pena's employer, and Arch Insurance Company, Powerline Services, Inc.'s insurance company are also named defendants.
[19] Rec. Doc. 29-1, p. 2, citing *Smith v. Progressive Cty. Mut. Ins. Co., et al.*, (E.D. La. 3/1/12) 2012 WL 702061, at *2 (citing *Duhon v. Marceaux*, 2002 WL 432383, at *4 (5th Cir. 2002).
[20] Rec. Doc. 29-1, pp. 2–3.

Plaintiff counters that Officer Dunaway is qualified as an accident reconstruction expert, having "completed formal training in Crash Investigation, Vehicle Dynamics Reconstruction, Pedestrian Reconstruction and Drone Reconstruction through Northwestern University in Chicago, Illinois."[21] Plaintiff further argues that Officer Dunaway may alternatively provide lay opinion testimony as to matters within his personal knowledge based upon his "rational perception of the facts and recollections pertaining to the scene of the accident."[22]

The Defendants rely principally on *Iglinsky v. Player*,[23] which the Plaintiff contends is distinguishable. In *Iglinsky*, the court granted a motion in limine as to causation opinion testimony of the investigating officer. The court in *Iglinsky* held that a non-expert investigating officer who investigated the underlying auto accident would be "permitted to testify as to other facts and circumstances surrounding the subject accident that he personally observed (such as where the vehicle was located when he arrived and any damage to the vehicle)," but would "not be permitted to testify as to his opinions concerning the cause of the accident in question."[24] In particular, the trooper was prohibited from "testify[ing] about crucial fact determinations concerning the accident's cause and liability, such as whether [the defendant driver] was acting carelessly or inattentively at the time of the accident." [25]

---

[21] Rec. Doc. 36, p. 2.
[22] Rec. Doc. 36, p. 4 (citing *State v. LeBlanc*, 2005-0885 (La. App. 1 Cir. 2/10/06), 928 So.2d 599, 603).
[23] 2010 WL 4925000, at *4 (M.D. La. July 16, 2010), *Adopting Report and Recommendation,* 2010 WL 4905984 (M.D. La. Nov. 24, 2010).
[24] *Report and Recommendation, Id.*
[25] *Id.*

In opposition the Plaintiff points out that in this case, Officer Dunaway is a qualified accident reconstructionist. Plaintiff submits that "if the proper foundation can be laid for his expert qualification, he should be permitted to testify within the scope of FRE 701."[26]

In reply Defendants argue that Officer Dunaway has never testified in court as an expert in accident reconstruction. However, Defendants concede that the officer's ACTAR certification is common among reconstructionists who testify as experts in court.[27]

> ACTAR offers an independent credentialing examination that objectively assesses a candidate's comprehension and application of minimum training standards of a forensic specialist in the field of motor vehicle accident investigation and reconstruction. An individual possessing the ACTAR certification is recognized as having demonstrated competence with respect to the requisite training standards for accident reconstruction established by the National Traffic Safety Administration (NHTSA).[28]

Although conceding Officer Dunaway's qualifications, Defendants argue that his causation opinion is not a permissive legal opinion. The Court disagrees. Causation is a fact question for the jury[29] and one of the FRE 702 inquiries is whether the proposed opinion testimony would assist to the trier of fact.

The Court will refer the Motion in Limine to the merits. The Motion to Exclude Expert Testimony of Officer Joshua Dunaway pretrial[30] is hereby DENIED without prejudice, all objections are reserved to trial.

### III. Motion in Limine to Exclude Future-Care Evidence (Rec. Doc. 30)

The Defendants move to exclude opinion testimony from two physicians regarding anticipated medical treatment that the Plaintiff may require for the remainder of his life

---

[26] Rec. Doc. 36, p. 5.
[27] Rec. Doc. 45, p. 2.
[28] *Id*.
[29] *Stevens v. Energy XXI GOM, LLC,* 2013 WL 4051036, at *4 (M.D. La. Aug. 9, 2013).
[30] Rec. Doc. 29.

expectancy (47 years). Specifically, Defendants move to exclude opinion testimony from Dr. Whatley regarding future care for the Plaintiff's right knee and testimony from Dr. Oberlander regarding future lumbar spine surgeries in the next 25 years.[31]

1. Dr. Whatley

The Plaintiff suffered a right closed tibia/fibula fracture in the accident. He was treated for this injury at Our Lady of the Lake Hospital by Dr. Marshall Whatley, an orthopedic surgeon, board certified in orthopedic trauma.[32] On September 12, 2021 Dr Whatley performed "intramedullary nailing for his right distal tibial shaft fracture."[33] Dr. Whatley continued to treat the Plaintiff post-operatively. Plaintiff represents that he will undergo hardware removal from his lower right leg. However, Dr. Whatley "wasn't anticipating anything like hardware removal."[34] Following the accident and tibia surgery the Plaintiff developed right knee pain. The Plaintiff treated with Dr. Sean Graham for right leg and knee pain management. In February 2022, two months after the tibia surgery, Dr. Whatley released the Plaintiff without restrictions.[35] In April 2023, the Plaintiff returned to Dr. Whatley complaining of right knee pain. Dr. Whatley recommended treatment with an over-the-counter anti-inflammatory.[36] Most recently, Dr. Whatley gave the Plaintiff a steroid injection in the right knee. In November 2023, the Plaintiff reported continuing pain in his right knee.

---

[31] Rec. Doc. 30.
[32] Rec. Doc. 30-3, pp. 5–6.
[33] Rec. Doc. 30-3, p. 16. A metal rod is "[inserted] inside the marrow cavity of the tibia", is fixated by screws at both ends, which "holds the alignment of the tibia and allows the tibia to heal and in good alignment." Dr. Whatley deposition, Rec. Doc. 30-3, p. 16.
[34] Rec. Doc. 30-3, p. 53.
[35] Rec. Doc. 30-3, pp. 30–32.
[36] Rec. Doc. 30-3, p. 51.

A treating physician is generally qualified to testify about a patient's past and expected future treatment, provided the foundational admissibility requirements of Rule 702[37] are satisfied. Defendants argue that Dr. Whatley's future care opinions are based on unsupported speculation and subjective belief and are therefore unreliable and must be excluded under FRE 702.

Dr. Whatley's opinion that are the subject of the instant Motion in Limine are:

- Plaintiff will require two to four intra-articular steroid injections in the right knee each year for remainder of life (*i.e.*, 95 to 191 future knee injections for his life expectancy of 47 years);

- Plaintiff will require two to four orthopedic office visits every year for remainder of life (*i.e.*, 95 to 191 future office visits over next 47 years);

- Plaintiff will require annual x-rays of the right knee for the next 47 years;

- Plaintiff will require one daily tablet of Meloxicam, 15mg, for life (i.e., 17,155 tablets of Meloxicam over the next 47 years).

Dr. Whatley estimates that the total cost for this future care will be between $59,163.75 and $93,937.00.

Dr. Whatley testified that "it's more likely that he's going to need further treatment for his knee than it is unlikely."[38] However, as for the need for future office visits and injections, Dr. Whatley conceded that he could not say that more probably than not the Plaintiff would require two to four injections per year in the future.[39] Dr. Whatley explained that he "can't say" more likely than not that the Plaintiff will need office visits or injections two to four times a year in the future "because he's only seen me . . . once in the past two

---

[37] Federal Rules of Evidence ("FRE").
[38] Rec. Doc. 30-3, p. 56.
[39] Q: "[I]t sounds like you can't say more likely than not, that he's going to need two to four injections per year?
  A: I can't." Rec. Doc. 34-3, Dr. Whatley Deposition Transcript 45:14–17.

years."[40] The Plaintiff had only one office visit in 2022 and one office visit in 2023 and the Plaintiff has had only one steroid injection to his knee since the accident.[41] The Court finds that there are insufficient facts or data from which Dr. Whatley could reliably conclude that the Plaintiff will, more likely than not, require two to four injections per year for the duration of his life. Dr. Whatley will not be permitted to give opinion testimony regarding the duration and frequency of possible right knee injections in the future.

As for the need for annual x-rays for the rest of the Plaintiff's life, Dr. Whatley testified that the need for future x-rays was wholly dependent on whether the Plaintiff presented for clinical exams in the future. Dr. Whatley explained that "if he sees me and his x-rays are more than a year old, we are probably going to get some x-rays of his knee."[42] Dr. Whatley may testify to the clinical need for updated x-rays if the Plaintiff continues to treat for knee pain. But the Court finds that there is insufficient facts or data from which Dr. Whatley could reliably conclude that the Plaintiff will, more likely than not, require annual x-rays for the remainder of his life. Dr. Whatley will not be permitted to testify to the frequency of anticipated future x-rays.

As for the Plaintiff's lifetime need for the prescription anti-inflammatory, Meloxicam, the Court finds that there is insufficient facts or data from which Dr. Whatley could reliably conclude that the Plaintiff will, more likely than not, require daily prescription anti-inflammatory for the rest of his life. As of Dr. Whatley's deposition on October 13, 2023 Dr. Whatley recommended over-the-counter NSAID as needed and Dr. Whatley's chart

---

[40] Rec. Doc. 30-3, p. 48.
[41] Rec. Doc. 30-3, pp. 33, 38 and 48.
[42] Rec. Doc. 30-3, p. 49.

did not reflect any recent prescription for Meloxicam.[43] The Motion in Limine as to the need for long-term future Meloxicam therapy shall be granted.

2. Dr. Oberlander

Dr. Eric Oberlander, a board-certified Neurosurgeon clinically evaluated Plaintiff a single time on May 5, 2023. Since the accident the Plaintiff has treated with Dr. Graham, a pain management specialist for lower back pain.[44] The Defendants do not dispute Dr. Graham's opinion recommending that the Plaintiff undergo five years of future lumbar epidural steroid injections (ESI's) at L4-S1, with associated office visits, physical therapy, diagnostic scans and medication.[45] Defendants argue that Dr. Oberlander's opinions of the need for future lumbar surgeries are unsupported, speculative and unreliable. Dr. Oberlander testified that surgery is not recommended unless and until the patient fails conservative therapies and that the aim of the epidural steroid injections is to avoid surgery.[46] Dr. Oberlander supports his opinion that the Plaintiff will require two future lumbar surgeries[47] based on the Plaintiff's "radiology findings and the fact that these issues in his back usually they just typically get worse. The degenerative changes he has usually get worse as the years go by."[48] He explained that "overweight folks with bad backs end -- end up typically not doing well over time."[49] Dr. Oberlander reiterated

---

[43] Rec. Doc. 30-3, p. 51.
[44] According to Dr. Oberlander, Dr. Graham is recognized as "the top trained pain management doctor in Louisiana. He's done a two-year fellowship at the Cleveland Clinic, which is -- is by most standards is top pain management fellowship. . . he's especially well thought of and well-trained." Rec. Doc. 30-2, pp. 23–24.
[45] Rec. Doc. 30-1, p. 1.
[46] Rec. Doc. 30-2, pp. 22–23.
[47] According to Dr. Oberlander, "[A]fter the two-level fusion [at L4-5} 25 years later he'll need an adjacent level fusion at L3-4." Rec. Doc. 30-2, p. 28.
[48] Rec. Doc. 30-2, p. 24.
[49] Rec. Doc. 30-2, p. 25.

throughout his deposition, that the Plaintiff will more probably than not require a future lumbar fusion.[50]

The Court finds Dr. Oberlander's opinions regarding the need for future lumbar surgeries to be unsubstantiated by the current facts of the case. The Plaintiff is still treating conservatively. There is no present indication that the efficacy of this conservative treatment is waning or likely to fail. On the current record Dr. Oberlander's opinions are unreliable speculative predictions. The Court GRANTS the Motion in Limine to exclude opinion testimony of Dr. Oberlander (Rec. Doc. 30) as to the need for future back surgery, without prejudice.

For the foregoing reasons the Motion to Exclude opinion testimony from Dr. Whatley is GRANTED and the Motion to Exclude opinion testimony from Dr. Oberlander is GRANTED, without prejudice.

The Court GRANTS the Motion to exclude corresponding testimony regarding the costs of future medical care which have been excluded by this *Ruling*.

 IV.  **Motion in Limine to Exclude Causation Opinion of Dr. Sean Graham (Rec. Doc. 31)**

Defendants move to exclude opinion testimony from Dr. Graham, the Plaintiff's treating pain management doctor, that the Plaintiff's injuries were caused by the subject accident. Defendant brings this Motion in anticipation that Dr. Graham will offer opinion testimony that "the mechanics of force from [the subject] car accident could [have] likely caused Plaintiff's disc herniations he observed in Plaintiff's MRI study."[51] In opposition the Plaintiff argues that "Defendants misrepresent Dr. Graham's opinion by claiming the

---

[50] Rec. Doc. 30-2, pp. 18, 25.
[51] Rec. Doc. 31-5, p. 6.

'central premise' to his theory on causation is that the mechanics of force from a car accident could likely cause Ozuna's herniations" and that "Dr. Graham does not seek to testify concerning the mechanics and severity of impact forces, nor their anticipated effect on the human body."[52] Trial is a dynamic process. The Court declines to make a pretrial evidentiary decision based on what the movant supposes Dr. Graham will say. As the Court reads his deposition, Dr. Graham is of the view that as between Physical Therapy and the subject car accident, he thought it more likely that the subject car accident caused the Plaintiff's lumbar disc injuries. Whether Dr. Graham is asked to opine on the relative forces of physical therapy versus this car accident is best left for objection at trial.

The Motion in Limine[53] is DENIED. Objections are reserved to the trial on the merits.

### V. Motion in Limine to Exclude Evidence of Future Earnings Loss (Rec. Doc. 32)

Defendant moves to exclude opinion testimony from Plaintiff's retained life care planner, Elizabeth Peralta and Economist, Dr. Randy Rice regarding future wage loss. The gravamen of the Motion is that the evidence of future medical care, which includes one and possibly two lumbar surgeries is too speculative and tenuous to support evidence of future wage loss. Defendants argue that Plaintiff has continued to work in his pre-injury occupation and has not completed the full course of ESI's recommended by Dr. Graham, which if effective would alleviate the need for a future back surgery. Following Dr. Oberlander's evaluation and opinion, the Plaintiff obtained a revised assessment of lost future earnings. On the assumption that the Plaintiff will continue to work in his current

---

[52] Rec. Doc. 33, p. 6.
[53] Rec. Doc. 31.

position for five years, but thereafter be limited to a light duty post-lumbar surgery, Plaintiff's economic experts conclude that Plaintiff will sustain $976,460 over a remaining work-life expectancy of 29.07 years.[54]

Work restrictions resulting from future lumbar surgery may affect the Plaintiff's ability to continue in his occupation. However, the Court finds that without a preponderance of evidence that conservative treatment will fail Dr. Oberlander's opinions about the need for future back surgery are inadmissible unreliable speculative predictions. The surgical opinion which underlie the life care plan and future wage loss calculations are tenuous, conditional and speculative.

Plaintiff urges the Court to let the jury sort it out, advancing the argument that "[a]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."[55] The official committee notes accompanying the 2023 revisions to FRE 702 make clear that courts "[holding] that the critical questions of the sufficiency of an expert's bases (sic) and . . . methodology, are questions of weight and not admissibility . . . are an incorrect application of Rules 702 and 104(a)."[56] An opinion that rests upon insufficient facts (facts not supported by a preponderance of evidence) is unreliable, and the reliability of an expert's opinion may not be left to juror comprehension.

The Plaintiff has not demonstrated a preponderance of evidence that supports Dr. Oberlander's assumptions which resulted in his opinions about the need for future back

---

[54] Rec. Doc. 32-5.
[55] Rec. Doc. 35, citing *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)); *see also Imperial Trading Co. v. Travelers Prop. Cas. Co.* of Am., No. 06-4262, 2009 WL 2356292, at *3 (E.D. La. July 28, 2009).
[56] Fed. R. Evid. 702 (2023 Amendments).

pay. The opinions regarding future wage loss which rest on the unreliable speculative prediction of future surgery are likewise inadmissible. The Defendants' Motion to Exclude Future Wage Loss Opinions[57] is hereby GRANTED.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 12th day of June, 2024.

_____
**SHELLY D. DICK
CHIEF DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA**

---

[57] Rec. Doc. 32.